# EXHIBIT A

1  LAW OFFICE OF WARREN C. OSGOOD
   WARREN C. OSGOOD - SB# 141169
2  10608 Hidden Grove Circle
   Stockton, CA 95209
3  Telephone: (209) 477-4040

4  Attorney for Plaintiff

5

6  :— C CASE HAS BEEN ASSIGNED TO
7      JUDGE MORRETT C. DELA NORTH 'IT 11
   FOR ALL PURPOSES INCLUDING T.

8        SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN

9

10 PATRICIA GALLOWAY,                    NO.  CV035030
                      Plaintiff,

11     vs.

12 CSD, a.k.a. Communication Service for the    **COMPLAINT FOR:**
   Deaf, Inc., a South Dakota Corporation;      1) Age Discrimination
13 Terri Hartner and Does 1-10 inclusive,       2) Sexual Harassment
                                                3) Constructive Discharge
14                                              4) Intentional Infliction of Emotional
                      Defendants.                  Distress
15

16
                        **FIRST CAUSE OF ACTION**
17                         **(Age Discrimination)**
                          **(Against CSD Only)**
18

19       1. Defendant, CSD, a.k.a. Communication Service for the Deaf, Inc., (hereinafter

20 "CSD") is a South Dakota Corporation and at all times mentioned herein, maintains

21 offices at 81 W. March Lane, City of Stockton, County of San Joaquin.

22
         2. Defendant Terri Hartner, (hereinafter "HARTNER") is an individual and was
23
   the Center Manager for CSD acting as plaintiff's supervisor. Plaintiff believes and
24
25 thereon alleges that HARTNER is a resident of San Joaquin County, California.

26

27

28
                                    1

Complaint

3. Defendants, Doe 1 through 10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to plaintiff. When their true names and capacities are ascertained, plaintiff will amend this Complaint.

4. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the defendants, including all defendants sued under fictitious names, was the agent and employee of each of the remaining defendants, and in doing the things hereafter alleged, was acting within the course and scope of this agency.

5. On or about June 12, 2000 CSD hired Patricia Galloway (hereinafter "GALLOWAY") to work as a Communication Service Representative for CSD at the March Lane office of CSD. Beginning in February, 2001, GALLOWAY was promoted to the position of supervisor.

6. Beginning in June 2001 various employees including plaintiff's superior, engaged in a pattern of discriminatory conduct directed at GALLOWAY based on her age. GALLOWAY was born on June 17, 1936. The following list of age discriminatory conduct includes but is not limited to the following:

a. Beginning in June of 2001 during a meeting a fellow trainer Rachel Cathcart told GALLOWAY that she has trouble relating to GALLOWAY because GALLOWAY was much older. Rachel said after all you are older than my mother. Three days later GALLOWAY was in the office with the Center Manager Rhasan, her superior, and informed him of what Rachel said and Rhasan just laughed at GALLOWAY.

2

Complaint

b. A few months later, Rhasan stated to GALLOWAY as she was leaving the office, "Aw c'mon Pat, why don't you retire? You know you can and have enough money and then you would not have to put up with all of this." GALLOWAY was upset by his remark.

c. During the entire time GALLOWAY worked as a supervisor for CSD she was never given a performance review and an increase in compensation other than an automatic cost of living increase, whereas several young supervisors (under 40 years) all received increases in salary following a position review.

d. In December 2002 a computer tutor became available to CSD from South Dakota Headquarters using the internet. The internet program teaches Microsoft Programs such as Excel. HARTNER, the Center Manager at that time, assigned herself and all the other administrative staff to have access to the computer training whereas, despite requests from GALLOWAY, HARTNER never permitted GALLOWAY to obtain this training. Even after several supervisors quit in July, 2003, the young supervisors who were hired to replace Matthew Barkley and Surita Powell were given access to the computer tutor internet training whereas GALLOWAY was still not permitted by HARTNER to obtain the training.

e. Due to the stress GALLOWAY felt on the job, she took a leave of absence from August 2002 to December 2002. During that time GALLOWAY used up her accrued paid time off and received nothing else whereas Rachel a young supervisor took maternity leave and was paid her full salary even after her paid time off was used

3

1    up. No other employees were permitted to receive pay for work at home, as was

2    Rachel, nor were they allowed to extend their maternity leave for full or part time pay.

3      f. In the spring of 2002, when a co-worker Zina Ramirez Sattler (mid-forty's)

4    announced her marriage plans, HARTNER asked her how somebody like her could get

5    so lucky at her age.

6

7      g. Donzaleigh M. Robinson (40+) volunteered to work Saturday's after

8    HARTNER requested help. When Donzaleigh requested a Saturday off she was denied

9    the request. Whereas, Andrea Franco, (20 or under years old) was granted a request

10   to take a Saturday off. Likewise Edgar Franco (20+) was scheduled to work Saturdays

11   with the understanding he would not request time off. He continually requested time off

12   but was not penalized.

13

14     h. In 2001, 2002 and 2003, Martha Schenk (40+) was not allowed to apply for a

15   promotion at CSD because her daughter worked there. Edgar Franco (20+) was offered

16   a promotion as a CSD scheduling representative. His sister Andrea at that time was a

17   representative. Likewise Gemini Thao was promoted to a position at CSD as an Agent

18   in Charge and her husband was hired. Furthermore, Mario Woods (mid thirties) was

19   promoted to a supervisor in July 2003. His uncle (mid 20's) worked as a Representative

20   at that time. When Martha Schenk was finally allowed to apply for a supervisor/ team

21   leader position in July 2003, when her daughter was no longer working there, she was

22   not given any consideration for the position.

23

24

25     i. During July/ August 2003, GALLOWAY was present during the interviews of

26   several individuals for the position of Supervisor/ Team Lead for two positions. At least

27

28

4

Complaint

1   two if not three female candidates in their 40's were interviewed but none of them were

2   offered a position even though GALLOWAY and Rachel Cathcart gave them good

3   ratings. Whereas, David Martinez (mid- 20's) who received low ratings was hired.

4       j. In December 2002, when GALLOWAY returned from stress leave, she

5

6   discovered that her duties as a supervisor had been stripped by HARTNER.

7   Furthermore, GALLOWAY was taken off the floor by HARTNER and given the duties of

8   employee call monitoring isolating her from the operations of CSD.  She was no longer

9   permitted to give instruction or advice to any of the employees she was supervising

10

11   prior to her leave. Even after Mathew Barkley and Surita, two fellow supervisors quit in

12   July 2003, GALLOWAY was still not permitted by HARTNER to give instruction to or

13   discipline the employees she was assigned to supervise even though GALLOWAY was

14   the only trained supervisor on the premises for a period of two and one-half months.

15   Furthermore, GALLOWAY'S office was moved by HARTNER to a location so that she

16

17   would not come into contact with the employees. When some of the employees

18   nevertheless sought out GALLOWAYS' advice, the employees were criticized by

19   HARTNER for having any discussions with GALLOWAY. After two new supervisors

20   were hired in July 2003, HARTNER gave them and the Interpreter/ Administrative

21

22   Assistant Jenny Gallegos the responsibility of doing Pay for Performance Reports even

23   though they had no prior experience doing this job. When GALLOWAY asked why she

24   was not given the responsibility one of the new supervisors hired in July responded that

25   they were told not to bother GALLOWAY because she was too busy with the temporary

26

27   employees. GALLOWAY previously supervised employees for over 2 1/2 years and

28

5

Complaint

1   had helped when the Pay for Performance process was set up. None of the three

2   individuals who did the Pay for Performance reviews had any experience supervising a

3   Team at the Center yet they were given this responsibility instead of GALLOWAY.

4          k. Due to the isolation, the loss of job responsiblities, failure to perform

5   performance reviews, the discrimination due to GALLOWAY'S age and the

6   discrimination directed at other elderly employees, and the sexual harassment referred

7   to in the second cause of action, plaintiff announced her resignation in July, 2003.

8   GALLOWAY was asked to remain on the job until August 2003 by HARTNER.

9   HARTNER had an automobile accident in late August 2003 in which she was severely

10  injured. As a result, Corporate V.P. James Skjeveland requested GALLOWAY remain

11  an additional two to four weeks. During September 2003 GALLOWAY met with a

12  company official from Tucson and discussed with him the problems she was having

13  with HARTNER. The official apologized and told GALLOWAY it is not her fault for what

14  HARTNER had been doing to GALLOWAY. Galloway's last day of work at CSD was on

15  September 26, 2003. On that day, GALLOWAY was told during a phone call with

16  James Skjeveland that he understood Galloway's need to resign.

17         7.  The aforementioned acts of defendant violate the California Fair Employment

18  and Housing Act, Government Code §12940, Subdivision (a), and violate Government

19  Code §12920.  Plaintiff has satisfied all procedural requirements before filing this

20  action. Plaintiff contacted the DFEH in late July 2004. Later she was interviewed by the

21  DFEH on September 14, 2004 and was mailed a complaint DFEH after she was

22  informed that the DFEH would not pursue her age discrimination claim. On September

Complaint

24, 2004 GALLOWAY signed and mailed the complaint to the DFEH.  The complaint alleges harassment against CSD due to plaintiff's age and her sex, female.

8.  Plaintiff received a right to sue letter from the State of California, Department of Fair Employment and Housing dated September 30, 2004.

9. As a proximate result of defendant's conduct, plaintiff has suffered and continues to suffer mental pain and humiliation and physical pain and anguish, and medical expenses and wage losses, all to her damage in an amount according to proof.

10. As a further proximate result of defendant's acts, as alleged above, plaintiff was required to retain the services of an attorney and will incur attorney's fees and costs in an amount according to proof.

11. In doing the acts stated above, CSD acted intentionally, maliciously and oppressively or with a conscious disregard of the rights of plaintiff so as to warrant an award of punitive damages against defendant.

### SECOND CAUSE OF ACTION
### (Sexual Harassment)
### (CSD Only)

12. Plaintiff realleges and incorporates paragraphs 1 – 11 as though fully set forth herein.

13. On various dates in 2001 through 2003, CSD willfully, knowingly and intentionally harassed plaintiff by providing a hostile environment, permitting sexual harassment and by causing plaintiff extreme emotional distress and by ultimately constructively terminating plaintiff's employment by subjecting plaintiff, to the following offensive conduct. (This is not a total list of all the conduct):

7

Complaint

a. In July 2001 Matthew Barkley told a story to a group of CSD administration employees while they were at lunch. He told the group including GALOWAY about what the roommate was wearing. The roommate said that (after exiting the bathroom) I didn't realize we had corn last night. GALLOWAY mentioned to some of the employees in her immediate area that the story was inappropriate. GALLOWAY reported to human resources that she believed the story was inappropriate.

b. On one occasion Matthew Barkley told a joke about a man using a urinal and used his hands descriptively to indicate the event while GALLOWAY was present. GALLOWAY also reported the incident to human resources stating it was totally inappropriate doing that in full view of the work force. GALLOWAY alleges that Matthew Barkley was not properly disciplined for his actions.

c. In August 2001, Matthew Barkley brought two plaques with bare breasted hula girls to work. After GALLOWAY complained to the center manager and Barkley about the images, Matthew Barkley finally removed them from work after GALLOWAY suggested he do so.

d. Sometime around August of 2001 plaintiff observed Matthew Barkley running around the premises at work appearing to try to grab the breasts of Rachel and was disgusted by his behavior.

e. In June or July 2003, Matthew Barkley drew a picture on a board in HARTNER's office. The picture was of a big breasted female (Rachel Cathcart) with a tube going from her breast to her new born baby at home (presumably to breast feed the baby since the baby was crying). Rachel had recently given birth to a child.

8

Complaint

GALLOWAY complained to HARTNER about the drawing but the drawing remained on the board until plaintiff's last day of employment.

14. The aforementioned acts of defendant violate the California Fair Employment and Housing Act, Government Code §12940, Subdivision j, and violate Government Code §12920. Plaintiff has satisfied all procedural requirements before filing this action.

15. As a proximate result of defendant's conduct, plaintiff has suffered and continues to suffer mental pain and humiliation and physical pain and anguish, and medical expenses, all to her damage in an amount according to proof.

16. As a further proximate result of defendant's conduct plaintiff has suffered lost income in the amount according to proof.

17. As a further proximate result of defendant's acts, as alleged above, plaintiff was required to retain the services of an attorney and will incur attorney's fees and costs in an amount according to proof.

18. The aforementioned conduct of defendant and was willful and malicious and was intended to oppress and cause injury to plaintiff. Plaintiff is, therefore, entitled to an award of punitive damages against defendant.

**THIRD CAUSE OF ACTION**
**(Constructive Discharge in Violation of Public Policy)**
**(Against CSB Only)**

19. Plaintiff GALLOWAY realleges paragraphs 1-18 and incorporates them as though fully set forth herein.

20. All of these acts including the conduct specified above created a hostile work environment in violation of Government Code §12940, Subdivisions a and j, and resulted in the constructive discharge of GALLOWAY on September 26, 2003.

Complaint

21. As a proximate result of defendant's conduct, GALLOWAY has suffered harm including humiliation, anxiety, embarrassment and mental anguish, all to her damage in an amount according to proof.

22. As a further proximate result of defendant's conduct GALLOWAY has suffered lost income in the amount according to proof.

23. In doing the acts stated above, CSD acted intentionally, maliciously and oppressively or with a conscious disregard of the rights of GALLOWAY so as to warrant an award of punitive damages against defendant.

### FOURTH CAUSE OF ACTION
### (Intentional Infliction Of Emotional Distress)
### (Against HARTNER Only)

24. Plaintiff realleges and incorporates paragraphs 1-23 as though fully set forth herein.

25. HARTNER engaged in the acts heretofore described intentionally in order to cause plaintiff severe emotional distress; alternatively, plaintiff alleges that such conduct was done in an intentional disregard of the probability of said conduct causing her severe emotional distress.

26. The foregoing conduct did, in fact, cause plaintiff to suffer extreme and severe emotional distress. As a proximate result of said conduct, plaintiff suffered embarrassment, anxiety, humiliation and emotional distress, and will continue to suffer said emotional distress in an amount according to proof.

WHEREFORE, plaintiff, GALLOWAY, prays judgment against defendants, and each of them, as follows:

1. For compensatory damages in an amount according to proof;

Complaint

2.  For special damages in an amount according to proof;

3.  For punitive damages in an amount to punish and set an example of CSD and HARTNER;

4.  For expert witness fees;

5.  For attorney's fees and costs; and

6.  For such other and further relief as the court deems proper.

DATED: February 3, 2005          LAW OFFICE OF WARREN C. OSGOOD

BY _____
                WARREN C. OSGOOD

Complaint

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CSD, a.k.a. Communication Service for the Deaf,Inc.,
a South Dakota Corporation; Terri Hartner and Does 1-
10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Patricia Galloway

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, SAN JOAQUIN COUNTY<br>222 EAST WEBER AVENUE<br><br>STOCKTON, CALIFORNIA 95202<br>STOCKTON BRANCH | CASE NUMBER:<br>*(Número del Caso):*<br>CV025689 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Office of Warren C. Osgood                       209-477-4040
Warren C. Osgood, S.B.N. 141169
10608 Hidden Grove Circle
Stockton, CA 95209

| DATE:<br>*(Fecha)* | FEB 0 4 2005<br>ROSA JUNQUERO | Clerk, by<br>*(Secretario)* | GRANT G. PREEO | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
& Plus

Code of Civil Procedure §§ 412.20, 465

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):

Law Office of Warren C. Osgood
Warren C. Osgood, S.B.N. 141169
10608 Hidden Grove Circle
Stockton, CA 95209

TELEPHONE NO: 209-477-4040    FAX NO:

ATTORNEY FOR (Name): Patricia Galloway

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN
STREET ADDRESS: 222 EAST WEBER AVENUE
MAILING ADDRESS:
CITY AND ZIP CODE: STOCKTON, CALIFORNIA 95202
BRANCH NAME: STOCKTON BRANCH

CASE NAME: Galloway v. CSD, et al.

**FOR COURT USE ONLY**

FILED

05 FEB -4 PM 2:07

ROSA JUNGULIRO, CLERK

BY GRANT G. PREEO
   DEPUTY

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited   [ ] Limited | [ ] Counter   [ ] Joinder | CV 025689 |
| (Amount demanded exceeds $25,000)   (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | JUDGE:  DEPT: |

*All five (5) items below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [x] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800-1812)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is  [x] is not  complex under rule 1800 of the California Rules of Court. If case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve       in other counties, states or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial post-judgment judicial supervision

3. Type of remedies sought (check all that apply):
   a. [x] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [x] punitive

4. Number of causes of action (specify): Four

5. This case [ ] is  [x] is not  a class action suit.

Date: 2/3/2005

Warren C. Osgood, Esq.
(TYPE OR PRINT NAME)

► _(signature)_
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate, Family, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet shall be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2003]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 201.8, 1800-1812;
Standards of Judicial Administration, § 19

Page 1 of 2

Legal Solutions & Plus

# <u>EXHIBIT B</u>

KATHLEEN PERKINS (Pro Hac Vice)
JILL WALDMAN (Pro Hac Vice)
CONSTANGY, BROOKS & SMITH, LLC
Suite 300, 2600 Grand Blvd.
Kansas City, Missouri 64108
Telephone: 816/472-6400
Facsimile: 816/472-6401

VELMA K. LIM, SBN: 111006
KROLOFF, BELCHER, SMART,
PERRY & CHRISTOPHERSON
7540 Shoreline Drive
Post Office Box 692050 (95269-2050)
Stockton, California 95219
Telephone: 209/478-2000
Facsimile: 209/478-0354

Attorney for Defendants
COMMUNICATION SERVICE FOR THE
DEAF, INC., and TERRI HARTNER

Filed       JUN 0 8 2006
:ROSA JUNQUEIRO, CLERK

By             CARMEN CARRASCO
                    DEPUTY

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN

PATRICIA GALLOWAY,

    Plaintiff,

    vs.

CSD, a.k.a. Communication Service for the
Deaf, Inc., a South Dakota Corporation; Terri
Hartner and Does 1-10 inclusive,

    Defendants.

CASE NO.: CV025689

**ORDER ON DEMURRER TO
COMPLAINT**

DATE:       May 17, 2005
TIME:       9:00 a.m.
DEPT:       11

    Defendants Communication Service for the Deaf, Inc. and Terri Hartner's Demurrer to Plaintiff's Complaint came on regularly for hearing on May 17, 2005, before the Honorable Bob W. McNatt, Superior Court, Department 11, County of San Joaquin. Plaintiff Patricia Galloway appeared through her attorney, Warren Osgood of the Law Office of Warren C. Osgood. Defendants Communication Service for the Deaf, Inc. and Terri Hartner appeared through their attorneys, Kathleen Perkins of Constangy, Brooks & Smith, LLC, and Velma Lim of Kroloff, Belcher, Smart, Perry & Christopherson. Having considered the memoranda

JUN 1 0 2005

of points and authorities filed by the parties, the pleadings on file herein, and oral argument of counsel at the court hearing of this matter,

IT IS HEREBY ORDERED THAT:

1.    Defendants' Demurrer to the First Cause of Action for age discrimination under California Fair Employment and Housing Act against defendant Communication Service for the Deaf, Inc. is sustained with 20 days' leave to amend to allege facts supporting estoppel, waiver, or equitable tolling of the one year statute of limitations to file a complaint of discrimination with the Department of Fair Employment and Housing.

2.    Defendants' Demurrer to the Second Cause of Action for sexual harassment under California Fair Employment and Housing Act against defendant Communication Service for the Deaf, Inc. is sustained with 20 days' leave to amend to allege facts supporting estoppel, waiver, or equitable tolling of the one year statute of limitations to file a complaint of discrimination with the Department of Fair Employment and Housing.

3.    Defendants' Demurrer to the Third Cause of Action for constructive discharge in violation of public policy against defendant Communication Service for the Deaf, Inc. is overruled.

4.    Defendants' Demurrer to the Fourth Cause of Action for intentional infliction of emotional distress against defendant Terri Hartner is sustained without leave to amend.

DATED:    **JUN 0 8 2005**

_K. PETER SAIERS_

The Honorable Bob W. McNatt,
JUDGE OF THE SUPERIOR COURT

Approved as to Form:

LAW OFFICES OF WARREN C. OSGOOD

By: _____
    WARREN C. OSGOOD
Attorney for Plaintiff
PATRICIA GALLOWAY

G:\data\wpdata\VKL\GALLOWAY V. CSD\STIP & ORDER.doc

Order on Demurrer to Complaint - 2

1

## PROOF OF SERVICE - CCP 1013a(3)

2

3   I am employed in the County of San Joaquin, State of California. I am over the age of 18 and not a party to the within action; my business address is 7540 Shoreline Drive; P.O. Box 692050; Stockton, California 95269-2050

4

5   I am "readily familiar" with firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postage service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

6

7   On May 27, 2005, I served the following:

8   ▸   **Judgement on Demurrer in Favor of Defendant Terri Hartner**
    ▸   **Order on Demurrer to Complaint**

9

10  ✓   by placing [__] the original [✓] a true copy thereof enclosed in sealed envelopes addressed as stated below. I caused such envelope(s) to be deposited in the mail at Stockton, California. The envelope(s) was/were mailed with postage thereon fully prepaid.

11

12  ☐   by causing a true copy thereof to be delivered by HAND to the office of the addressee(s) as stated below.

13

14  ☐   by causing a true copy thereof to be delivered via FACSIMILE to the offices of the addressee(s) as stated below.

15

16  ☐   by causing a true copy thereof to be placed in a sealed CALIFORNIA OVERNIGHT package with postage fully prepaid in the designated area for CALIFORNIA OVERNIGHT addressed as stated below.

17

18  Warren C. Osgood
    **LAW OFFICE OF WARREN C. OSGOOD**
    **10608 Hidden Grove Circle**
    **Stockton, CA 95209**

    **Kathleen Perkins**
    **Jill Waldman**
    **CONSTANGY, BROOKS & SMITH, LLC**
    **Suite 300, 2600 Grand Blvd.**
    **Kansas City, Missouri 64108**

19

20

21

22  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

23  Executed on May 27, 2005 at Stockton, California.

24

25

26  ROXANNE CIMARRUSTTI

27

28

KATHLEEN PERKINS (Pro Hac Vice)
JILL WALDMAN (Pro Hac Vice)
CONSTANGY, BROOKS & SMITH, LLC
Suite 300, 2600 Grand Blvd.
Kansas City, Missouri 64108
Telephone: 816/472-6400
Facsimile: 816/472-6401

VELMA K. LIM, SBN: 111006
KROLOFF, BELCHER, SMART,
PERRY & CHRISTOPHERSON
7540 Shoreline Drive
Post Office Box 692050 (95269-2050)
Stockton, California 95219
Telephone: 209/478-2000
Facsimile: 209/478-0354

Attorney for Defendants
COMMUNICATION SERVICE FOR THE
DEAF, INC., and TERRI HARTNER

Filed    JUN 0 8 2005
ROSA JUNQUEIRO, CLERK

By    CARMEN CARRASCO
DEPUTY

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN

| | |
|---|---|
| PATRICIA GALLOWAY,<br><br>        Plaintiff,<br><br>    vs.<br><br>CSD, a.k.a. Communication Service for the Deaf, Inc., a South Dakota Corporation; Terri Hartner and Does 1-10 inclusive,<br><br>        Defendants. | CASE NO.: CV025689<br><br>**JUDGMENT ON DEMURRER IN FAVOR OF DEFENDANT TERRI HARTNER**<br><br>DATE:    May 17, 2005<br>TIME:    9:00 a.m.<br>DEPT:    11 |

Pursuant to the Order on Demurrer to Plaintiff's Complaint sustaining defendant Terri Hartner's demurrer to the Fourth Cause of Action for intentional infliction of emotional distress without leave to amend and no other cause of action remaining in the Complaint against defendant Terri Hartner,

IT IS HEREBY ADJUDGED AND DECREED that judgment is entered in favor of defendant Terri Hartner.

DATED:    JUN 0 8 2005

K. PETER SAIERS    for
The Honorable Bob W. McNatt,
JUDGE OF THE SUPERIOR COURT

Judgment on Demurrer in Favor of Defendant Terri Hartner - 1

JUN 1 0 2005

1

2    Approved as to Form:

3    LAW OFFICES OF WARREN C. OSGOOD

4

5    By: _____
     WARREN C. OSGOOD

6    Attorney for Plaintiff
     PATRICIA GALLOWAY

7
     G:\data\wpdata\VKL\GALLOWAY V. CSD\STIP & ORDER.doc
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

1    LAW OFFICE OF WARREN C. OSGOOD
     WARREN C. OSGOOD - SB# 141169
2    10608 Hidden Grove Circle
     Stockton, CA 95209
3    Telephone: (209) 477-4040

4    Attorney for Plaintiff

5

6

7

8            SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN

9

10   PATRICIA GALLOWAY,                          NO.  CV025689
                         Plaintiff,

11        vs.                                    FIRST AMENDED COMPLAINT FOR:
                                                 1)  Age Discrimination
12   CSD, a.k.a. Communication Service for the   2)  Sexual Harassment
     Deaf, Inc., a South Dakota Corporation;     3)  Constructive Discharge
13   and Does 1-10 inclusive,

14                       Defendants.

15

16                          **FIRST CAUSE OF ACTION**
17                          **(Age Discrimination)**

18

19        1. Defendant, CSD, a.k.a. Communication Service for the Deaf, Inc., (hereinafter

20   "CSD") is a South Dakota Corporation and at all times mentioned herein, maintains

21   offices at 81 W. March Lane, City of Stockton, County of San Joaquin.

22        2. Terri Hartner, (hereinafter "HARTNER") is an individual and was the Center

23   Manager for CSD acting as plaintiff's supervisor.

24

25

26

27

28                                        1

     Complaint

3. Defendants, Doe 1 through 10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to plaintiff. When their true names and capacities are ascertained, plaintiff will amend this Complaint.

4. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the defendants, including all defendants sued under fictitious names, was the agent and employee of each of the remaining defendants, and in doing the things hereafter alleged, was acting within the course and scope of this agency.

5. On or about June 12, 2000 CSD hired Patricia Galloway (hereinafter "GALLOWAY") to work as a Communication Service Representative for CSD at the March Lane office of CSD. Beginning in February, 2001, GALLOWAY was promoted to the position of supervisor.

6. Beginning in June 2001 various employees including plaintiff's superior, engaged in a pattern of discriminatory conduct directed at GALLOWAY based on her age. GALLOWAY was born on June 17, 1936. The following list of age discriminatory conduct includes but is not limited to the following:

a. Beginning in June of 2001 during a meeting a fellow trainer Rachel Cathcart told GALLOWAY that she has trouble relating to GALLOWAY because GALLOWAY was much older. Rachel said after all you are older than my mother. Three days later GALLOWAY was in the office with the Center Manager Rhasan, her superior, and informed him of what Rachel said and Rhasan just laughed at GALLOWAY.

b. A few months later, Rhasan stated to GALLOWAY as she was leaving the office, "Aw c'mon Pat, why don't you retire? You know you can and have enough

2

money and then you would not have to put up with all of this." GALLOWAY was upset by his remark.

c. During the entire time GALLOWAY worked as a supervisor for CSD she was never given a performance review and an increase in compensation other than an automatic cost of living increase, whereas several young supervisors (under 40 years) all received increases in salary following a position review.

d. In December 2002 a computer tutor became available to CSD from South Dakota Headquarters using the internet. The internet program teaches Microsoft Programs such as Excel. HARTNER, the Center Manager at that time, assigned herself and all the other administrative staff to have access to the computer training whereas, despite requests from GALLOWAY, HARTNER never permitted GALLOWAY to obtain this training. Even after several supervisors quit in July, 2003, the young supervisors who were hired to replace Matthew Barkley and Surita Powell were given access to the computer tutor internet training whereas GALLOWAY was still not permitted by HARTNER to obtain the training.

e. Due to the stress GALLOWAY felt on the job, she took a leave of absence from August 2002 to December 2002. During that time GALLOWAY used up her accrued paid time off and received nothing else whereas Rachel a young supervisor took maternity leave and was paid her full salary even after her paid time off was used up. No other employees were permitted to receive pay for work at home, as was Rachel, nor were they allowed to extend their maternity leave for full or part time pay.

3

Complaint

f. In the spring of 2002, when a co-worker Zina Ramirez Sattler (mid-forty's) announced her marriage plans, HARTNER asked her how somebody like her could get so lucky at her age.

g. Donzaleigh M. Robinson (40+) volunteered to work Saturday's after HARTNER requested help. When Donzaleigh requested a Saturday off she was denied the request. Whereas, Andrea Franco, (20 or under years old) was granted a request to take a Saturday off. Likewise Edgar Franco (20+) was scheduled to work Saturdays with the understanding he would not request time off. He continually requested time off but was not penalized.

h. In 2001, 2002 and 2003, Martha Schenk (40+) was not allowed to apply for a promotion at CSD because her daughter worked there. Edgar Franco (20+) was offered a promotion as a CSD scheduling representative. His sister Andrea at that time was a representative. Likewise Gemini Thao was promoted to a position at CSD as an Agent in Charge and her husband was hired. Furthermore, Mario Woods (mid thirties) was promoted to a supervisor in July 2003. His uncle (mid 20's) worked as a Representative at that time. When Martha Schenk was finally allowed to apply for a supervisor/ team leader position in July 2003, when her daughter was no longer working there, she was not given any consideration for the position.

i. During July/ August 2003, GALLOWAY was present during the interviews of several individuals for the position of Supervisor/ Team Lead for two positions. At least two if not three female candidates in their 40's were interviewed but none of them were

4

offered a position even though GALLOWAY and Rachel Cathcart gave them good ratings. Whereas, David Martinez (mid- 20's) who received low ratings was hired.

j. In December 2002, when GALLOWAY returned from stress leave, she discovered that her duties as a supervisor had been stripped by HARTNER. Furthermore, GALLOWAY was taken off the floor by HARTNER and given the duties of employee call monitoring isolating her from the operations of CSD.  She was no longer permitted to give instruction or advice to any of the employees she was supervising prior to her leave. Even after Mathew Barkley and Surita, two fellow supervisors quit in July 2003, GALLOWAY was still not permitted by HARTNER to give instruction to or discipline the employees she was assigned to supervise even though GALLOWAY was the only trained supervisor on the premises for a period of two and one-half months. Furthermore, GALLOWAY'S office was moved by HARTNER to a location so that she would not come into contact with the employees. When some of the employees nevertheless sought out GALLOWAYS' advice, the employees were criticized by HARTNER for having any discussions with GALLOWAY. After two new supervisors were hired in July 2003, HARTNER gave them and the Interpreter/ Administrative Assistant Jenny Gallegos the responsibility of doing Pay for Performance Reports even though they had no prior experience doing this job. When GALLOWAY asked why she was not given the responsibility one of the new supervisors hired in July responded that they were told not to bother GALLOWAY because she was too busy with the temporary employees. GALLOWAY previously supervised employees for over 2 1/2 years and had helped when the Pay for Performance process was set up. None of the three

5

Complaint

1   individuals who did the Pay for Performance reviews had any experience supervising a

2   Team at the Center yet they were given this responsibility instead of GALLOWAY.

3       k. Due to the isolation, the loss of job responsibilities, failure to perform

4   performance reviews, the discrimination due to GALLOWAY'S age and the

5   discrimination directed at other elderly employees, and the sexual harassment referred

6
    to in the second cause of action, plaintiff announced her resignation in July, 2003.
7

8   GALLOWAY was asked to remain on the job until August 2003 by HARTNER.

9   HARTNER had an automobile accident in late August 2003 in which she was severely

10  injured. As a result, Corporate V.P. James Skjeveland requested GALLOWAY remain

11  an additional two to four weeks. During September 2003 GALLOWAY met with a

12
    company official from Tucson and discussed with him the problems she was having
13

14  with HARTNER. The official apologized and told GALLOWAY it is not her fault for what

15  HARTNER had been doing to GALLOWAY. Galloway's last day of work at CSD was on

16  September 26, 2003. On that day, GALLOWAY was told during a phone call with

17  James Skjeveland that he understood Galloway's need to resign.

18
        7.  The aforementioned acts of defendant violate the California Fair Employment
19

20  and Housing Act, Government Code §12940, Subdivision (a), and violate Government

21  Code §12920.  Plaintiff has satisfied all procedural requirements before filing this

22  action.

23
        Plaintiff contacted the DFEH in late July 2004. On August 12, 2004 plaintiff
24

25  called the DFEH to request forms. She spoke to Lois Marshall and informed her that

26  statute is running and that she needs to hurry.  On August 17, 2004 plaintiff found the

27

28  _____
                                    6

Complaint

1   forms on the internet, completed them and mailed them to the DFEH immediately. On

2   August 23, 2004 GALLOWAY received a call from Lois Mitchell informing GALLOWAY

3   that she would be sending the questionnaire and informed GALLOWAY that the

4   interview on the telephone would take place on September 14, 2004. GALLOWAY

5   asked her if the interview could be scheduled earlier because the time is running. Lois

6   Mitchell informed GALLOWAY that was the earliest date available and assured

7   GALLOWAY that all would be completed before the statute ran out. On August 26,

8   2004 GALLOWAY received the questionnaire completed it and express mailed it on

9   September 8, 2004 to the DFEH.   Later she was interviewed by the DFEH on

10  September 14, 2004. After the interview, Lois Mitchell explained that she would be

11  sending GALLOWAY a package of determination notices and if plaintiff requested, a

12  right to sue. On September 22, 2004, GALLOWAY received the package stating that

13  the complaint was accepted for filing purposes on September 15, 2004 and a notice

14  that no investigation would be performed since plaintiff had requested a right to sue. On

15  September 24, 2004 GALLOWAY realized she had not received the right to sue letter.

16  GALLOWAY spoke to Lois Mitchell on September 24, 2004 and Ms. Mitchell informed

17  GALLOWAY of the procedure to obtain a right to sue. GALLOWAY told Ms. Mitchell

18  that she would sign and mail the DFEH complaint that day. Ms. Mitchell said "fine" and

19  said as soon as we receive it we will send a right to sue letter. GALLOWAY repeated

20  that she would mail it on September 24, 2004 and she mailed that day. At no time was

21  GALLOWAY informed that if she mailed it on September 24, 2004 that the complaint

7

Complaint

would not be timely filed nor was she informed that she should take it to Fresno and file it over the counter to make sure it was timely filed.

9.  Plaintiff received a right to sue letter from the State of California, Department of Fair Employment and Housing dated September 30, 2004.

10. In mid October 2004 plaintiff called Lois Mitchell and asked if the date could be changed for the filing date. Ms. Mitchell checked with her supervisor and informed plaintiff that while the Department could not change the date, all of their records indicate that the case was timely filed as far as the Department is concerned. The complaint alleges harassment against CSD due to plaintiff's age and her sex, female.

11. As a proximate result of defendant's conduct, plaintiff has suffered and continues to suffer mental pain and humiliation and physical pain and anguish, and medical expenses and wage losses, all to her damage in an amount according to proof.

12. As a further proximate result of defendant's acts, as alleged above, plaintiff was required to retain the services of an attorney and will incur attorney's fees and costs in an amount according to proof.

13. In doing the acts stated above, CSD acted intentionally, maliciously and oppressively or with a conscious disregard of the rights of plaintiff so as to warrant an award of punitive damages against defendant.

## SECOND CAUSE OF ACTION
### (Sexual Harassment)

14. Plaintiff realleges and incorporates paragraphs 1 – 13 as though fully set forth herein.

8

Complaint

15. On various dates in 2001 through 2003, CSD willfully, knowingly and intentionally harassed plaintiff by providing a hostile environment, permitting sexual harassment and by causing plaintiff extreme emotional distress and by ultimately constructively terminating plaintiff's employment by subjecting plaintiff, to the following offensive conduct. (This is not a total list of all the conduct):

a. In July 2001 Matthew Barkley told a story to a group of CSD administration employees while they were at lunch. He told the group including GALOWAY about what the roommate was wearing. The roommate said that (after exiting the bathroom) I didn't realize we had corn last night. GALLOWAY mentioned to some of the employees in her immediate area that the story was inappropriate. GALLOWAY reported to human resources that she believed the story was inappropriate.

b. On one occasion Matthew Barkley told a joke about a man using a urinal and used his hands descriptively to indicate the event while GALLOWAY was present. GALLOWAY also reported the incident to human resources stating it was totally inappropriate doing that in full view of the work force. GALLOWAY alleges that Matthew Barkley was not properly disciplined for his actions.

c. In August 2001, Matthew Barkley brought two plaques with bare breasted hula girls to work. After GALLOWAY complained to the center manager and Barkley about the images, Matthew Barkley finally removed them from work after GALLOWAY suggested he do so.

9

Complaint

1    d. Sometime around August of 2001 plaintiff observed Matthew Barkley running

2  around the premises at work appearing to try to grab the breasts of Rachel and was

3  disgusted by his behavior.

4    e. In June or July 2003, Matthew Barkley drew a picture on a board in

5  HARTNER's office. The picture was of a big breasted female (Rachel Cathcart) with a

6  tube going from her breast to her new born baby at home (presumably to breast feed

7  the baby since the baby was crying). Rachel had recently given birth to a child.

8

9  GALLOWAY complained to HARTNER about the drawing but the drawing remained on

10  the board until plaintiff's last day of employment.

11    16.  The aforementioned acts of defendant violate the California Fair Employment

12  and Housing Act, Government Code §12940, Subdivision j, and violate Government

13  Code §12920.  Plaintiff has satisfied all procedural requirements before filing this

14  action.

15

16    17. As a proximate result of defendant's conduct, plaintiff has suffered and

17  continues to suffer mental pain and humiliation and physical pain and anguish, and

18  medical expenses, all to her damage in an amount according to proof.

19

20    18. As a further proximate result of defendant's conduct plaintiff has suffered lost

21  income in the amount according to proof.

22    19.  As a further proximate result of defendant's acts, as alleged above, plaintiff

23  was required to retain the services of an attorney and will incur attorney's fees and

24  costs in an amount according to proof.

25

26

27

28
_____10_____

Complaint

20.  The aforementioned conduct of defendant and was willful and malicious and was intended to oppress and cause injury to plaintiff.  Plaintiff is, therefore, entitled to an award of punitive damages against defendant.

### THIRD CAUSE OF ACTION
### (Constructive Discharge in Violation of Public Policy)

21. Plaintiff GALLOWAY realleges paragraphs 1-20 and incorporates them as though fully set forth herein.

22.  All of these acts including the conduct specified above created a hostile work environment in violation of Government Code §12940, Subdivisions a and j, and resulted in the constructive discharge of GALLOWAY on September 26, 2003.

22. As a proximate result of defendant's conduct, GALLOWAY has suffered harm including humiliation, anxiety, embarrassment and mental anguish, all to her damage in an amount according to proof.

23. As a further proximate result of defendant's conduct GALLOWAY has suffered lost income in the amount according to proof.

24. In doing the acts stated above, CSD acted intentionally, maliciously and oppressively or with a conscious disregard of the rights of GALLOWAY so as to warrant an award of punitive damages against defendant.

WHEREFORE, plaintiff, GALLOWAY, prays judgment against defendants, and each of them, as follows:

1.  For compensatory damages in an amount according to proof;

2.  For special damages in an amount according to proof;

3.  For punitive damages in an amount to punish and set an example of CSD;

---

11

Complaint

1      4.  For expert witness fees;

2      5.  For attorney's fees and costs; and

3      6.  For such other and further relief as the court deems proper.

4

5

6

7    DATED:  June 6, 2005              LAW OFFICE OF WARREN C. OSGOOD

8

9

10                                BY _____
                                       WARREN C. OSGOOD
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    12

Complaint

1

**PROOF OF SERVICE  - CCP § 1013a, 2015.5**

2         I, the undersigned, am over the age of eighteen years and am a resident of San Joaquin
County, California.  I am not a party to this action.  My business address is 10608 Hidden Grove

3    Circle, Stockton, California  95209.

4         On June 6, 2005 I served the following documents:

5    FIRST AMENDED COMPLAINT

6    Velma Lim, Esq.                          Jill Waldman, Esq.
7    Kroloff , Belcher et al.                  Constangy, Brooks & Smith, LLC
     PO Box 692050                            2600 Grand Blvd., Suite 300
8    Stockton, CA 95269-2050                  Kansas City, MO 64108

9    **XXXXX(BY MAIL) depositing** the sealed envelope with the United States Postal
10         Service with the postage fully prepaid by Priority Mail.

11    _____ **(BY MAIL) placing** the envelope for collection and mailing on the date
            and at the place showing below following our ordinary business practices.
12         I am readily familiar with the business practice for collecting and
           processing correspondence for mailing.  On the same day that
13         correspondence is placed for collection and mailing, it is deposited in the
           ordinary course of business with the United States Postal Service in a
14         sealed envelope with postage fully prepaid.

15    _____**BY OVERNIGHT MAIL SERVICE)** by placing the envelope for collection
16         following our ordinary business practices for collection and processing
           correspondence for mailing by express or overnight mail.

17    _____ **(BY PERSONAL SERVICE)** I caused such envelope to be delivered
18         by hand to the addressee.

19    _____**(BY FACSIMILE)** I  caused the aforementioned document to be sent to the above by
20    means of facsimile transmission.

21         Executed on June 6, 2005 at Stockton, California.

22         I declare under penalty of perjury under the laws of the State of California that the
      foregoing is true and correct.
23

24                                    _____
                                          Warren C. Osgood
25

26

27

28